## STATE v SELLS et

Ohio Appeals, 2nd Dist, Fayette Co.

No. 243.   Decided Nov. 6, 1939

Charles J. Schwartz, Prosecuting Attorney, for plaintiff-appellee.

Stanley Paxon, for defendants-appellants.

## OPINION

BY THE COURT:

Defendants were indicted, tried, convicted and sentenced for the offense of assault and battery. They prosecute appeal on questions of law.

The assault occurred on December 12, 1938. The defendants were patrolmen in the police department in the City of Washington, Sells, a regular officer, Blackmore, a substitute patrolman. The prosecuting witness, William Sullivan was a resident of Washington engaged in the business of collecting rubbish and garbage.

At about 8 o'clock in the morning of the 12th of December, 1938, the prosecuting witness was about his business collecting rubbish by the means of a truck. He had been on the south side of Court St., in the downtown section of Washington and drove diagonally across Court St. to the north side thereof and parked headed east. When he stopped his truck Officer Sells accosted him and informed him that he was violating the traffic laws of the City of Washington. Sullivan then went into the Bargain Store to make collection of rubbish. As he did so he made the observation to several men, probably out of hearing of the officer, "For two cents I would take a poke at that cop", or some similar expression. When Sullivan came out of the Bargain Store Sells handed him a ticket charging him with improper parking and reckless operation of a motor vehicle. Sullivan excepted to the reckless operation charge and took the matter up with Officer Sells insisting that he be informed of what the reckless operation consisted. The officer said, "Do you want to take that ticket or want me to take you in?", to which Sullivan, in substance, replied that it made no difference, that he had to go in anyway. Whereupon the officer, walking on the left side of Sullivan, took hold of his right arm and they together moved toward the police station. There is some dispute in the testimony as to the force with which the officer caught hold of Sullivan, Sullivan insisting that he held his arm high in the air and caused him pain. Sullivan remonstrated and says that he told the officer that if he would let go his arm he would go along with him. This is denied by the officer in the trial although, in a preliminary hearing he testified as did Sullivan on this matter.

As they proceeded toward the station and had moved off the curb and into the street an altercation ensued which is the subject of much of the testimony and presents the material facts upon which the charge against the defendants rests.

According to Sullivan and his witnesses, some seven in number, he at no time struck the officer, Sells. Officer Sells testifies, and is corroborated by one witness, that as he and Sullivan went into the street Sullivan pulled loose from him, struck him on the right temple and knocked his glasses off. Whereupon they wrestled and it is admitted by everybody that they went down together. Concensus of opinion is that Sells, in the first instance, was

underneath but only for a moment, when Sullivan was turned over, put underneath and Sells held him down securely. Simultaneously with Sells recovering the superior position over Sullivan he struck him with his black jack which he had, at all times after beginning to make the arrest, held in his right hand. According to Sullivan and his witnesses the officer continued to strike Sullivan about the head, the testimony as to the number of times varying. Some of the State's witnesses say as little as three and others as much as eight times.

The overwhelming weight of the testimony is to the effect that Sullivan was in no position to offer further resistance after Officer Sells hit him the first time with the black jack. There is some testimony to effect that the men went down twice, that in the first instance Sullivan got up, stood quietly, made no effort to offer resistance and thereupon and thereafter when they went to the ground, Officer Sells hit Sullivan. In any event while Sullivan was recumbent and Sells was hitting him, a witness, Clark Pensyl went over to the parties and at that time Officer Blackmore came up and was hitting Sullivan with his mace. The number of times that Blackmore hit Sullivan is also in dispute. He says once. The witnesses fixed the number of times at from one to seven or eight. Pensyl asked the men to desist from striking Sullivan and asked Sullivan to remain quiet, whereupon Officer Sells got off of Sullivan and he and Officer Blackmore took Sullivan to the jail.

Although, as we have said, there is dispute among the witnesses as to the number of times that the officers hit Sullivan, there can be little doubt under the physical facts that he was struck in the head at least ten times and it may well be that he was struck more times elsewhere. Because of the position of Sells and Sullivan it is probable that he warded off some of the blows with his arms. Sullivan testifies, and it is not contradicted, that he had ten cuts and bruises on his head, three of which were gashes requiring stitches, seven others being smaller. Dr. Persinger who attended Sullivan fixes the length of the cuts at.1, 1½ and 1¾ inches and the depth thereof at two inches. Sullivan was a much smaller and lighter man than Sells.

It was the claim of defendants that the force employed upon Sullivan was only that which seemed reasonably necessary to the officers to overcome his resistance and effect his arrest. It was the theory of the state, which the trial judge adopted, that the force used by the officers was entirely disproportionate to that which was required to subdue Sullivan and to safely conduct him to the jail.

The defendants having waived a jury and consented to be tried to the judge reposed in him the authority, obligation and duty of determining the facts. Exercising this prerogative the trial judge held against the defendants. In this conclusion we find ample support in this record.

In the most favorable view of the testimony supported by a number of disinterested witnesses Sullivan at no time offered any active resistance to arrest. The court had the right to take this view of the testimony. On the other hand, if everything that defendants introduced be accepted, even so, the trial judge had the right to say that they used excessive and unnecessary force in accomplishing the arrest of Sullivan. As to Blackmore, as the trial judge observed, there was no excuse whatever for him to strike Sullivan.

It must at all times be kept in mind that Sullivan was not charged with a felony. His offense was but a misdemeanor.

There is no serious dispute as to the law controlling this case. It is set out in 6 C. J. S. page 825 where it is said,

"A peace officer duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order, or to overcome resistance to his authority. Thus an officer making an

arrest is justified in using sufficient force to subdue the prisoner although not acting in self defense. However, if unnecessary violence is used by the officer in accomplishing his purpose, * * * or if he assaults the person whom he is arresting without just cause or excuse, especially after resistance to his authority ceases, * * * he loses the protection of the law."

To like effect 5 C. J. 639. Thomas v Kincaid (Ark.) 15 L. R. A. 558.

The broadest rule that has been announced is that an officer in making an arrest may use such force as to him seems reasonably necessary under the circumstances. Some courts have said that this means such care as an ordinarily prudent person would use under the circumstances. Though the broadest concept of this rule be given application the trial judge had the right to say that the officers in this case exceeded the discretion which was vested in them and used excessive and unnecessary violence in arresting Sullivan.

Defendants had the benefit of an impartial hearing and trial. It is altogether possible that a jury would not have accorded to them that consideration and full benefit of all of their legal rights which it is obvious the trial judge scrupulously employed in determining and fixing their guilt. That Sullivan was badly beaten can not be doubted. Even William Allen, a witness for the defense, says that when Blackmore hit Sullivan he, Allen, "turned away because he did not want to witness any more." The trial judge fully appreciated and readily accorded to the defendants that protection which must be afforded to law-enforcing officials in carrying out the mandates of the law and in accomplishing the arrest of alleged violators. On the other hand the court recognized the protection which must be given to men who are subject to arrest as against excessive, unreasonable and unnecessary violence in putting them under arrest.

The judgment will be affirmed.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.